**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

In the Matter of an Application                    :
to Enforce Administrative Subpoena of the          :
                                                   :
U.S. COMMODITY FUTURES                             :
TRADING COMMISSION,                                :
                                                   :
                        Applicant,                 :     Misc. Case No.: 07-00169 (RMU)
                                                   :
            v.                                     :     Document Nos.: 1, 11, 18
                                                   :
THE MCGRAW-HILL COMPANIES, INC.,                   :
                                                   :
                        Respondent.                :

**<u>MEMORANDUM OPINION</u>**

**DENYING MCGRAW-HILL'S MOTION FOR LEAVE TO FILE A SUR-REPLY;**
**GRANTING IN PART THE APPLICATION FOR AN ORDER**
**REQUIRING COMPLIANCE WITH ADMINISTRATIVE SUBPOENA;**
**GRANTING IN PART MCGRAW-HILL'S CROSS-MOTION FOR A PROTECTIVE ORDER**

## I.  INTRODUCTION

Submitted for the court's resolution is the application of the United States Commodity

Futures Trading Commission ("the Commission") for an order requiring the respondent, The

McGraw-Hill Companies, Inc. ("McGraw-Hill"), to comply with an administrative subpoena,

against which the latter has filed an Opposition and Cross-Motion for a Protective Order.

Inhabiting the respective roles of the agency charged with enforcing fair trading in the natural

gas market and the primary news source for the energy market, the parties are no strangers to

battle over the legal landscape of the reporter's privilege.  In the instant matter, however, they

restrict the scope of their conflict to four subpoena requests.  Because the court concludes that

the Commission successfully demonstrates its need for all but one of the requested documents in

its subpoena, the court grants in part and denies in part the Commission's application.  The court

likewise grants in part and denies in part McGraw Hill's cross-motion for a protective order, concluding that the subpoenaed documents may not be disclosed to unauthorized third parties but may be disclosed in subsequent related litigation; additionally, as the upheld document requests do not offend the reporter's privilege or impose an undue burden on McGraw Hill, they will not be narrowed or otherwise modified by the court.

## II.  BACKGROUND

### A.  Factual History

This controversy emerges from the unfortunate but frequent collision of two institutions employing contrary means to achieve convergent interests.  The Commission is an independent federal regulatory agency charged with administering and enforcing the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq.*, the purview of which includes protecting the integrity of the energy markets.  McGraw-Hill is a leading publisher and a primary source of price information for the energy industry.  Resp.'s Opp'n to App.'s Mot. to Compel and Cross-Motion for a Protective Order ("Resp.'s Opp'n"), at 5.  The parties share the goal of fostering competitive natural gas markets but employ methods that sometimes run perpendicular to each other: the Commission utilizing investigatory and enforcement mechanisms to sanction price manipulation, App.'s Mot. for an Order Requiring Compliance with Admin. Subpoena ("App.'s Mot."), at 6, and McGraw-Hill utilizing newsgathering and reporting to facilitate price generation that transparently reflects market conditions of supply and demand, *id.* at 7.

The present subpoena enforcement request concerns the Commission's non-public investigation[1] of an energy company[2] for manipulation and attempted manipulation of the price of natural gas at certain delivery locations in Texas.  App.'s Mot. at 6.  The Commission suspects that the energy company, primarily from August through December of 2005 and possibly in 2003, 2004 and 2006, submitted trading data to the publication *Inside FERC* (McGraw-Hill's natural gas price publication) designed to manipulate prices to profit the company by improving its financial positions tied to the very same index.  *Id.* at 9-10.

## B.  Procedural History

On December 15, 2006, the Commission served a subpoena on McGraw-Hill for information related to the energy company's trade data submissions.  *Id.* at 11.  McGraw-Hill objected to Document Request Nos. 1, 2, 4 and 6, claiming that the reporter's privilege of the First Amendment protected against disclosure.  *Id.* at 12.  The parties attempted to craft a protective order to meet both sides' concerns but stumbled over two provisions inserted by the Commission: (1) that the Commission may, without prior notice to McGraw-Hill, "disclose, grant access to, and transmit the [subpoenaed] [d]ocuments to any Federal or State department, agency, or other entity identified in Section 8(e) of the [Commodity Exchange Act] that is acting

---

[1]    On July 26, 2007, the Commission initiated a civil prosecution in this matter by filing a two-count complaint in the U.S. District Court for the Northern District of Texas alleging that four corporate defendants attempted to manipulate the price of natural gas at the Houston Ship Channel delivery hub during September 2005 and November 2005 in violation of § 9(a)(2) of the Commodity Exchange Act, 7 U.S.C. § 13(a)(2).  Supplemental Filing in Support of App.'s Mot., at 1.

[2]    The identity of the energy company is not revealed, pursuant to the court's order granting the Commission's motion to seal due to an ongoing nonpublic investigation.  May 30, 2007 Order Granting Motion to Seal Declaration and Exhibits.

within the scope of its jurisdiction"; and (2) that the protective order shall, upon the filing of an

administrative or injunctive complaint, become "null and void."  *Id.* at 21-23.

The Commission filed its motion for enforcement of the subpoena on April 30, 2007, and

McGraw-Hill filed its opposition and cross-motion for a protective order on June 14, 2007.  On

July 6, 2007, McGraw-Hill sought leave to file a sur-reply.  The Commission opposed this

request.[3]

## III.  ANALYSIS

### A.  The Court Grants In Part And Denies In Part the Application To Enforce the Commission's Subpoena

The Commission maintains that it needs the subpoenaed information to establish two

elements of manipulation and attempted manipulation: ability and causation.  App.'s Mot. at 17.

---

[3]    McGraw-Hill argues that the attachment to the Commission's reply contains new facts.
Resp.'s Mot. to File Sur-reply ("Resp.'s Sur-reply Mot."), at 2. The Commission responds that
the attachment merely "correct[ed] erroneous facts supplied by [McGraw-Hill] in its Opposition .
. . and supplied certain additional details . . . [which] did not contain new argument but rather
elaborated on facts previously provided in the [attachment to the Commission's Motion]."  App.'s
Opp'n to Resp.'s Proposed Sur-reply ("App.'s Opp'n to Sur-reply"), at 2.  To demonstrate good
cause for considering a sur-reply, one must show that the reply filed by the opposing party raised
new arguments that were not included in the original motion.  *Stanford v. Potomac Elec. Power
Co.*, 394 F. Supp. 2d 81, 87 (D.D.C. 2005); *cf. Alexander v. FBI*, 186 F.R.D. 71, 74 (D.C. Cir.
1998).  The Commission's reply adds information that, in McGraw-Hill's own words, "amounts
to nothing more than broad statements of general applicability."  Resp.'s Proposed Sur-reply at 2.
These broad statements do not add new arguments to the mix.  Nor does the eight-page proposed
sur-reply itself respond to any new arguments; rather, it merely reiterates old ones.  Resp.'s
Proposed Sur-reply at 5-8.  McGraw-Hill quibbles over the Commission's elaboration as to the
type of price manipulation it suspects (flooding the market to depress prices), but this
specification has no effect on the applicability of the reporter's privilege, as it hardly matters
whether the suspected manipulations concern artificial inflation or artificial depression of prices,
so long as they constitute artificial deviations from the norm of supply and demand.  *See* 7 U.S.C.
§ 13(a)(2) (prohibiting any person from manipulating or attempting to manipulate the price of any
commodity in interstate commerce); *Cargill, Inc. v. Hardin*, 452 F.2d 1154, 1163 (8th Cir.1971)
(explaining that manipulation is conduct intended to result "in a price which does not reflect the
basic forces of supply and demand").  Neither fairness nor judicial economy justifies further
briefing.  The court, therefore, denies leave to file a sur-reply.

McGraw-Hill primarily argues that the subpoenaed information will not help the Commission establish these elements because the requested documents do not show how a company could submit accurate trading data to *Inside FERC* but nevertheless be engaged in price manipulation. *E.g.*, Resp.'s Opp'n. at 10.  Finding itself at an impasse with the Commission, McGraw-Hill invokes[4] the reporter's privilege to prevent the enforcement of the subpoena and protect the confidentiality of its sources and practices.  *Id.* at 11-12.

### 1.  The Legal Standard for the Reporter's Privilege

As a general rule, the law favors broad disclosure.  *See, e.g.*, FED. R. CIV. P. 26(b)(1) (describing the permissible scope of discovery in extremely broad terms); *cf. United States v. Bryan*, 339 U.S. 323, 331 (1950) (noting the long-recognized public interest in truthseeking).  A reporter may be protected from having to comply with a disclosure request, however, when it would impair his ability to gather news, thereby weakening "a vital source of public information."  *See, e.g.*, *Zerilli v. Smith*, 656 F.2d 705, 711 n.39 (D.C. Cir. 1981) (finding a "reporter's privilege," as "[t]he Supreme Court [has] explicitly acknowledged the existence of First Amendment protection for news gathering") (citing *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)); *see also In re Behar*, 779 F. Supp. 273, 275 (S.D.N.Y. 1991) (recognizing that the reporter's privilege applies to both confidential and nonconfidential disclosures from the source to the reporter).

---

4    The Commission does not dispute that McGraw-Hill may claim protection under the privilege as a reporter.  Clearly, it may.  *See U.S. Commodity Futures Trading Comm'n v. McGraw-Hill Cos., Inc.*, 390 F. Supp. 2d 27, 34 (D.D.C. 2005) (identifying the same respondent as a news gatherer eligible to invoke the privilege); *Cf. Branzburg*, 408 U.S. at 703-05 (noting that any attempt to define news or a newsgatherer for purposes of the privilege treads dangerously close to discriminating on the basis of content); 23 FED. PRAC. & PROC. EVID. § 5426 (noting that, under Federal Rule of Evidence 501, "[t]he weight of authority indicates an extremely broad view of who should be able to claim the privilege").

The party asserting the reporter's privilege ("the privilege") bears the burden of showing that it applies in a particular case. *Hutira v. Republic of Iran*, 211 F. Supp. 2d 115, 120 n.4 (D.D.C. 2002) (citing *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)); *Alexander v. FBI*, 186 F.R.D. 21, 49 (D.D.C. 1998) (quoting *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224 (2d Cir. 1984)). Whether the privilege prevails in a given case is determined by a balancing test. *Id.* The balancing test requires evaluation of two factors: (1) the need for the information and (2) whether the party seeking the information has exhausted all reasonably available alternative sources. *Zerilli*, 656 F.2d at 713-14. If the requested information is crucial to a party's case, the balance of interests favors disclosure. *Id.*; *Carey,* 492 F.2d at 637 (overriding the privilege when the information goes to "the heart of the matter"). But a party must produce more than "[m]ere speculation that information might be useful . . . [it] must describe the information [it] hope[s] to obtain and its importance to [its] case with a reasonable degree of specificity." *Black Panther Party v. Smith*, 661 F.2d 1243, 1268 (D.C. Cir. 1981)), *cert. granted and vacated as moot*, 458 U.S. 1118 (1982).

In this Circuit, the privilege applies to civil as well as criminal actions, but may be overcome by a compelling interest in disclosure. *Zerilli*, 656 F.2d at 712. In criminal cases, for example, the strong public interest in law enforcement can readily overcome the privilege. *E.g.*, *Branzburg*, 408 U.S. at 685 (intoning that "the great weight of authority is that newsmen are not exempt from the normal duty of appearing before a grand jury and answering questions relevant to a criminal investigation"). By contrast, in civil cases, the privilege typically prevails because any interest in overcoming the privilege is by definition a private rather than a public interest. *Zerilli*, 656 F.2d at 712.

This case lies somewhere between a criminal action and civil matter. *See U.S. Commodity Futures Trading Comm'n v. McGraw-Hill Cos., Inc.*, 390 F. Supp. 2d 27, 34 (D.D.C. 2005) (concluding in a prior subpoena enforcement action between the same parties that the Commission's investigation of an energy company for price manipulation was more akin to a criminal case than a civil matter). Here the Commission, an agency charged with regulating the natural gas market, is investigating (and has recently filed a civil prosecution against) the energy company for price manipulation. Tasked with these regulatory powers and duties, the Commission executes a significant public interest. *See Resolution Trust Corp. v. Walde*, 18 F.3d 943, 947 (D.C. Cir. 1994) (observing that "[t]he Supreme Court has made clear that an agency's investigatory authority is far-reaching, analogous to that of a grand jury, which 'can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not'") (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950)); *but see Zerilli*, 656 F.2d at 711 (explaining that "[w]ithout an unfettered press, citizens would be far less able to make informed political, social, and *economic* choices")[5] (emphasis added) and Supplemental Filing in Supp. of App.'s Mot., Ex. 1, at 16-17 (requesting civil remedies against energy company in civil prosecution). Therefore, when conducting the balancing test, the court takes a more qualified view of the privilege than would be appropriate in a purely civil case.

---

[5] McGraw-Hill's First Amendment interest overlaps with the interest of consumers and law enforcement in ensuring competitive energy markets through transparent, market-determined prices. *See Zerilli v. Smith*, 656 F.2d 705, 711 (D.C. Cir. 1981) (reiterating that the "courts should look to the facts of each case, weighing the public interest in protecting the reporter's sources against the private interest in compelling disclosure") (internal citation omitted).

**2.  The Commission Demonstrates Need for Document Request Nos. 1, 2 and 4 But Not 6**

The Commission claims that it needs the requested documents to establish two elements of manipulation and attempted manipulation, viz., the ability to influence prices and the causation of manipulated prices.  App.'s Mot. at 17.  Manipulation is demonstrated by intentional conduct resulting in a price that does not reflect basic forces of supply and demand. 7 U.S.C. §§ 13(a)(2) and 13(b); *Cargill*, 452 F.2d at 1163; *cf. U.S. Commodity Futures Trading Comm'n v. Enron*, 2004 WL 594752 at *4 (S.D. Tex. March 10, 2004).  Attempted manipulation is demonstrated by the intent to affect market prices and some "overt act" in furtherance thereof. *U.S. Commodity Futures Trading Comm'n v. Atha, et al.*, 420 F. Supp. 2d 1373, 1381 (N.D. Ga. 2006).  To establish ability and causation, the Commission asserts that it must (1) confirm that the energy company reported and McGraw-Hill received the trade data furthering the manipulation of prices; (2) confirm that McGraw-Hill included the energy company's trade data in its calculation of the *Inside FERC* index; and (3) determine how that data affected the *Inside FERC* index.  App.'s Mot. at 17.

McGraw-Hill counters that the Commission's requests exceed its proven investigatory needs.  Specifically, McGraw-Hill challenges four requests: Document Request Nos. 1, 2, 4 and 6.[6]  Resp.'s Opp'n at 6.

---

6      Request No. 1 demands: "All documents received by *Inside FERC's Gas Market Report* during the Relevant Time Period from any employee or agent of [the energy company] that contains price, volume or delivery location of any natural gas baseload transaction for the Houston Ship Channel."  App.'s Mot., Ex. 6, at 8.  Request No. 2 demands: "All documents concerning reporting of information about natural gas transactions . . . including . . . instructions about the types of natural gas transactions for which [the energy company] should submit information."  *Id.* Request No. 4 demands: "All documents reflecting, referencing or implementing formulas used to calculate index prices for each day of the Relevant Time Period for each natural gas delivery point at which any employee or agent of [the energy company] submitted price and volume information on each day of the relevant period."  *Id.*  And Request No. 6 demands: "All documents reflecting any complaints received from any person, or any conversation that relates to

8

### a.  Document Request No. 1 Is Not Privileged

Request No. 1 seeks the trade data submitted to McGraw-Hill for use in *Inside FERC*.

App.'s Mot., Ex. 6, at 8.  McGraw-Hill objects that this data will have no bearing on whether the

reported trades were the legitimate forces of supply and demand.  Resp.'s Opp'n at 10.  But this

argument is either inapposite, confused, or both.  Information that is a necessary element of

proof in a party's claim constitutes critical evidence for which a court will abrogate the

reporter's privilege.  *Carey*, 492 F.2d at 637.   Documents reflecting the receipt by McGraw-Hill

of trade data submitted by the energy company can show whether the energy company's trades

affected the price index.[7]  Therefore, as the requested documents comprise evidence of causation

under the charge of manipulation, and evidence of an "overt act" under the charge of attempted

manipulation, they go to the heart of the Commission's case, and the reporter's privilege cannot

prevent their disclosure.

McGraw-Hill's objection that the documents will not establish how (absent the

submission of false prices) the energy company manipulated – that is, corrupted rather than just

affected – the price index, is also inapposite.  It does not rebut the Commission's argument that

the Commission must, to carry its case against the energy company, demonstrate the latter's

ability to influence the natural gas prices through submission to *Inside FERC*.  McGraw-Hill's

argument is, furthermore, confused because it appears to assert that the Commission must first

---

the communication of false, inaccurate or otherwise incorrect price and volume information or
attempted price manipulation by any employee or agent of [the energy company] during the
Subpoena Period."  *Id.*

[7]    *Inside FERC* inputs reported data into a commodity index price calculator that creates a weighted
average monthly price that takes into account the price and volume of natural gas transactions.
App.'s Mot., Banar Decl., ¶ 10, Ex. 2.  Energy companies routinely price natural gas contracts off
of this index.  App.'s Reply, Bruno Decl., ¶ 21.

establish how the trades manipulated (corrupted) prices before demonstrating how the trades affected prices at all through their publication in *Inside FERC*. Sequential submission of proof of the elements of a violation is not, however, a condition of establishing the need for information. *See id.* (recognizing a libel plaintiff's need for documents to prove both falseness of statements and malice).

The court notes that this conclusion accords with that of Judge Lamberth who, in a case decided just last year involving the same parties, granted (pursuant to an administrative subpoena) document requests identical with the first three requests at issue here.[8] *U.S. Commodity Futures Trading Comm'n v. Whitney*, 441 F. Supp. 2d 61, 74 (D.D.C. 2006). McGraw-Hill labors to distinguish *Whitney*, arguing that the manipulation investigated there was performed by submitting false trade reports whereas the manipulation investigated here was performed by other means. *Id.* at 20-21. But this distinction is factitious. It is no uncommon insight that price manipulation may occur through means other than the submission of false trade data. *See Cargill*, 452 F.2d at 1163 (noting wistfully that the means of manipulation are "limited only by the ingenuity of man"); *e.g., Frey v. Commodity Futures Trading Comm'n*, 931 F.2d 1171, 1175 (7th Cir. 1991) (describing manipulation by means other than submission of false prices, e.g., through a "squeeze" by controlling the long-term position in market). In conclusion, nothing prevents the court from recognizing that the documents identified in Request No. 1 are not privileged.

---

8    In fact, this case was itself a sequel to a prior case before Judge Lamberth.
     *U.S. Commodity Futures Trading Comm'n v. McGraw-Hill Cos., Inc.*, 390 F. Supp. 2d 27, 38 (D.D.C. 2005).

### b.  Document Request No. 2 Is Not Privileged

Request No. 2 demands any instructions and related documents for reporting trade data provided by McGraw-Hill to the energy company during the investigated period.  App.'s Mot., Ex. 6, at 8.  McGraw-Hill phrases its objection cryptically – refusing to produce anything more than *Inside FERC's* published methodologies and complaining that the Commission could obtain these by subscription to the publication.  Resp.'s Opp'n at 9 n.12.  The Commission notes that McGraw-Hill has objected to Request No. 2, but the Commission does not clarify the scope of its request.[9]  App.'s Mot. at 11.  Putting that omission aside, Request No. 2 is probative of manipulation because it seeks information about McGraw-Hill's promulgated methodology for submitting trade reports.  It is probative of both intent, revealing that the energy company knew how to submit data on manipulated trades, and of causation, providing a link in the chain in the production of the price index.  *See Whitney*, 441 F. Supp. 2d at 68-69 (finding that *Inside FERC's* reporting instructions are probative of *scienter*).  The privilege, therefore, should not impede the government's access to this information.

### c.  Document Request No. 4 Is Not Privileged

Request No. 4 demands the formulas used by McGraw-Hill to calculate the price index.  App.'s Mot., Ex. 6, at 8.  Again, McGraw-Hill justifies its recalcitrance with the argument that "the CFTC has refused to explain why the documents reflecting the process by which *Inside FERC* indices were created would have any bearing on whether the trades Energy Company had reported were artificial."  Resp.'s Opp'n. at 10 (internal quotations omitted).  This sidesteps the

---

[9]    The court reminds the parties that "[a] litigant does not properly raise an issue by addressing it in a 'cursory fashion' with only 'bare-bones arguments.'"  *Cement Kiln Recycling Coalition v. EPA*, 255 F.3d 855, 869 (D.C. Cir. 2001).

pertinent questions: First, are the formulas probative of the energy company's ability to influence market price?  They are.  *Whitney*, 441 F. Supp. 2d at 68 (explaining that if the Commission "cannot ascertain how [trade data] information was used . . . to generate . . . index prices, it may be unable to determine the potential and actual effects of the . . . reports on market prices").  And second, is it crucial for the Commission to be able to determine whether the energy company's reports could have had an effect on prices?  It is.  *Supra* III.A.2.a; *McGraw-Hill*, 390 F. Supp. 2d at 33.  Thus, the objection to Request No. 4 is also deficient.

### d.  Document Request No. 6 Is Privileged

Request No. 6 demands any unsolicited complaints received by McGraw-Hill about the energy company's alleged price manipulation.  App.'s Mot., Ex. 6, at 8.  McGraw-Hill argues that the Commission has not explained why it believes McGraw-Hill would possess any complaints.  Resp.'s Opp'n at 10.  The Commission's response is evasive and conclusory, stating only that "[t]hose complaints are directly relevant to the Commission's investigation and are unavailable from any other source," App.'s Reply at 24, and citing Judge Lamberth's decision enforcing a prior subpoena with an identical request, *McGraw-Hill*, 390 F. Supp. 2d at 38 (enforcing Request No. 10).  Judge Lamberth did abrogate the privilege for this request, but he also indicated that McGraw-Hill did not particularly object to this request; thus, his decision does not examine the question.  *See id.* at 35-36 (declaring that "McGraw-Hill objects most strenuously to Request Nos. 3, 4 and 5 of the Subpoena").

The Commission's unqualified demand for all complaints is an unlicensed fishing expedition into McGraw-Hill's records – precisely the sort of abuse from which the privilege shields reporters.  *See In re Grand Jury Subpoena: Subpoena Duces Tecum*, 829 F.2d 1291, 1302

12

(4th Cir. 1987) (quashing subpoena because it constituted a "paradigmatic fishing expedition" that insufficiently heeded First Amendment concerns).  The Commission proffers no facts for suspecting that the energy company's competitors may have filed complaints with McGraw-Hill about the energy company's manipulative trading.  *See In re Petroleum Products Antitrust Litigation*, 680 F.2d 5, 8 (2d Cir. 1982) (upholding the privilege when an investigation failed to preliminarily inquire of relevant companies individually whether they had ever submitted information to the publisher of the price index); *see also McGraw-Hill*, 390 F. Supp. 2d at 35 (deeming it unreasonable to search for "data that may or may not reside in the files" of companies).  The Commission does not specify what element of manipulation these complaints might demonstrate.  And the Commission fails to explain how access to these complaints will, vis-à-vis other information already in its possession or under request, further its investigation or civil prosecution against the energy company.  To abrogate the privilege under these circumstances, the court would have "to pile inference upon inference," *United States v. Lopez*, 514 U.S. 549, 567 (1994) – in effect, not merely overriding the privilege but burying it.  On Request No. 6, therefore, the court vindicates McGraw-Hill's objection.

### b.  The Commission Made Reasonable Efforts to Exhaust Alternative Sources

Even when a party demonstrates need, the privilege will not be abridged absent an attempt to obtain the information from other reasonable sources.  *Zerilli*, 656 F.2d at 713 (holding that "[e]ven when the information is crucial to a litigant's case, reporters should be compelled to disclose their sources only after the litigant has shown that he has exhausted every reasonable alternative source of information").  This requirement reflects the principle that the privilege should be abrogated only as a last resort.  *Carey*, 492 F.2d at 638.  This does not mean,

13

however, that a litigant must pursue an "onerous, wide-ranging or ill-lighted" discovery path before seeking to obtain the information from a newsgatherer. *Id.* at 639. In exhaustion, the rule of reason governs.

McGraw-Hill disputes the Commission's need for trade data submitted by the energy company and in McGraw-Hill's possession, arguing that the energy company can supply documents verifying its submissions of trade data to *Inside FERC*. Resp.'s Opp'n at 24. Indeed, the Commission first directed its request to the energy company, but has since discovered that the energy company does not have "the universe of documents that were exchanged between it and [McGraw-Hill]." App.'s Mot. at 19. One office of the energy company is missing the trade report from September 2005; some reports omit the year the trades were executed; and McGraw-Hill's receipt of the trade reports exactly as submitted by the energy company can only be confirmed by the reports in McGraw-Hill's possession. *Id.* at 20; App.'s Reply at 18; *see Whitney*, 441 F. Supp. 2d at 69 (finding that the documents are necessary to "confirm not only that [they were] transmitted, but also that [they were] received and used by [McGraw-Hill]"). Moreover, only McGraw-Hill's records can confirm the submission procedures and price index formulas used to publish *Inside FERC*.[10] *See id.* (holding that McGraw-Hill is the only source of the information contained in the instructions and formulas for the *Inside FERC* price index). The court certifies that the Commission's efforts to exhaust other sources are reasonable.

---

10    As the court has already found the Commission without need for hypothesized complaints about the energy company, it may forego opining on whether the Commission could discover these through reasonable investigation elsewhere.

### C. The Court Grants In Part And Denies In Part McGraw-Hill's Cross-Motion for a Protective Order

McGraw-Hill urges the court to at least grant a protective order restricting the Commission's discretion to disclose the subpoenaed documents. Specifically, it asks the court to strike the Commission-inserted provisions in the parties' negotiated protective order allowing the Commission to, without prior notice to McGraw-Hill: (1) "disclose, grant access to, and transmit the [subpoenaed] [d]ocuments to any Federal or State department, agency, or other entity identified in Section 8(e) of the [CEA] that is acting within the scope of its jurisdiction"; and (2) declare the protective order, upon the filing of an administrative or injunctive complaint, "null and void as to those documents relevant to the charges or conduct forming the basis of or described in [the complaint]." App.'s Mot. at 21-23; Banar Decl. Ex. 8, at ¶ 12.

As to the first provision, the Commission claims that it has a "statutory right to share the information with other State or Federal law enforcement agencies." *Id.* at 22. This includes sharing relevant information with FERC in recognition of the latter's ongoing investigation of the energy company. App.'s Reply at 20-21. The Commission assures the court that it would be a "waste of judicial resources to require the FERC to issue its own subpoena to McGraw-Hill . . . to compel production of the same documents, based upon the [sic] essentially the same set of facts." *Id.* at 21. As a compromise, the Commission proposes that if another agency should request the documents from the Commission, the court could conduct an *ex parte*, *in camera* review of that agency's need for the information and its exhaustion of alternative sources. App.'s Mot. at 23. McGraw-Hill retorts that if any other agency wants the requested documents, it can request them itself, rather than obtaining them extra-judicially through the Commission. Resp.'s Reply at 6.

The Commission's position is without precedent in this jurisdiction.  *See, e.g.*, *Carey*, 492 F.2d at 636 (holding that the balancing test should be conducted "on a case-by-case basis [in] accord[] with the tried and traditional way of adjudicating such questions") (quoting *Branzburg v. Hayes*, 408 U.S 665, 710 (1972) (Powell, J., concurring)).  One judge of this jurisdiction has already labeled this position "troubling," holding that "any subsequent disclosure of the documents must necessarily be on condition that the balancing test is also met in that particular case."  *Whitney*, 441 F. Supp. 2d at 72.  "Permitting indiscriminate disclosure effectively eviscerates the protection provided by the reporter's privilege in the first place, and would vastly expand the narrow purpose of the public interest exception."  *Id.*  The Commission does not cite, and the court is unaware of, any legal authority indicating that, absent an emergency, a party's First Amendment rights may be abrogated without notice or an opportunity to respond.  The reporter's privilege is flexible, but not so much so that forcing it into the Commission's preferred form would not break it.

As regards the second provision, the Commission argues that it is necessary that the protective order become void upon the filing of a complaint because the Government is not permitted to file secrete complaints, or to conduct secret trials.  App.' s Mot. at 23.  Moreover, the prejudice to First Amendment rights is minimal, the Commission advises the court, as McGraw-Hill will have ample time to file a motion for a new protective order with the relevant court or agency if the original is voided.  *Id.*  McGraw-Hill takes exception, observing that in two prior cases involving the same parties, the Commission "managed to file non-secret complaints and conduct non-secret litigation while keeping – per the orders of each court – McGraw-Hill's documents confidential."  Resp.'s Reply at 10.

Whether the reporter's privilege precludes the Commission from disclosing the requested information in a related civil prosecution is a question subsumed under the preliminary balancing test, which requires the court to examine whether the information goes to the heart of the matter in question—namely, the ongoing investigation and the civil prosecution. *See Whitney*, 441 F. Supp. 2d at 70 (deeming McGraw-Hill's request for a protective order moot because the court had already found that "the competing public interest in the [Commission's] civil prosecutions" outweighed the privilege). In both this case and *Whitney*, the court's assessment of the Commission's need for the information included a consideration of its need for the documents in a related civil prosecution. *See id* at 65 (extending to a civil prosecution the court's prior holding in a criminal investigation that the balancing test "must be undertaken with a 'more qualified view of the privilege'" to reflect the greater public interest in federal law enforcement). Simply stated, a disclosure of the documents in the civil prosecution is not a subsequent, separate disclosure "for purposes other than the matters pursuant to which the Subpoenas were issued," and, therefore, need not be preceded by a case-specific determination by a court of law. *Id.* at 72; *see Lee v. Dep't of Justice*, 413 F.3d 53, 60 (D.C. Cir. 2005) (explaining that abrogation of the privilege enables not merely disclosure to the subpoena applicant but also testimony at trial or deposition). Of course, even when a reporter is stripped of the privilege, he is not left entirely defenseless against the strictures of litigation: the usual requirements of relevance, need, and limited burdens on a subpoenaed person still apply. *Id.*; *see* Fed. R. Evid. 401, 403; Fed. R. Civ. P. 45(c)(1). Thus, the court concludes that McGraw-Hill's objection is misplaced.

17

### D.  The Court Declines to Modify the Subpoena

As alternative relief, McGraw-Hill urges the court to narrow the subpoena in three relevant respects.[11]  First, McGraw-Hill argues, the court should limit the relevant time period for the document requests to 2005, Resp.'s Mot. at 28, even though the Commission is requesting documents from the months of August through December for the years 2003, 2004, 2005 and 2006, Banar Decl. ¶ 7.  Second, the court should modify Document Request No. 1 to permit compliance by means of declaration rather than document production to indicate which reports McGraw-Hill has received from the energy company.  *Id.* at 29.  And third, the court should narrow Document Request No. 4 to data submissions concerning trades exclusive to the Houston Ship Channel.  *Id.* at 29-30.

### 1.  The Court Will Not Limit the Relevant Time Period

Restricting the subpoena to documents from 2005 is appropriate, McGraw-Hill maintains, because that is "the only year for which [the Commission] purports to possess evidence," App.'s Mot. at 28.  The Commission counters by adverting to evidence that the energy company made manipulative trades in the fall of 2003 and 2004, Bruno Decl. ¶ 28 (citing the Commission's "information and belief"), as well as early 2006, *id.* ¶ 26 (citing the testimony of a risk analyst with the energy company).  App.'s Reply at 23.  McGraw-Hill replies that the Commission's "information and belief" does not suffice as a "clear and specific showing that the

---

11      A fourth request, that Document Request No. 6 be stricken, is moot in light of the court's ruling today. *See supra* III.A.2.d.  Also, McGraw-Hill appears to have withdrawn its request that "the identities and the data related to sources other than [the energy company] should be redacted." Resp.'s Opp'n at 30; Resp.'s Reply at 17 n.16.  Because the Commission had already consented to redact such information, the request never resounded with any clarity.

[privileged material] is highly material and relevant." Resp.'s Reply at 16 (internal quotations omitted).

To establish that illicit activity may have occurred in the year 2006, the Commission's proffered evidence – the statement of an employee with relevant knowledge – clearly will suffice. Whether a mere averment of "information and belief" of manipulative trading likewise stands safely outside the perimeters of the reporter's privilege or makes an unsupportable incursion, however, poses a closer question. The court will enforce a request for trade data from years outside those during which a violation allegedly occurred if the data has a "more than reasonable" chance of satisfying the intent element of manipulative trading. *Whitney*, 441 F. Supp. 2d at 63 (concluding that legitimate trade reports from prior years might establish that the defendants' submission of false data was not a product of mistake or ignorance). Reports of trades from the same location, made by the same company, of the same commodity and during the same months from the two years preceding the alleged manipulation is evidence that is probative of the element of intent. *Cf. United States v. Hubbard*, 493 F. Supp. 202, 205 (D.D.C. 1979) (quashing a subpoena because claim, based off the contents of a chapter in a reporter's book, that the reporter might have information relevant to a police search was speculative and "merely cumulative" hearsay). This being so, the court will not restrict the relevant time period.

## 2. The Court Will Not Excuse Compliance By Production of Documents

In response to McGraw-Hill's proposal that it comply with Document Request No. 2 by affidavit, the Commission declares that "McGraw-Hill should not be permitted to dictate to the Commission (or this Court) what documents it is required to produce, nor the manner of their production." App.'s Reply at 25. McGraw-Hill maintains that its "proposal to authenticate

documents already in the CFTC's possession constitutes a reasonable way of reducing the intrusion upon the reporter's privilege and is hardly startling." Resp.'s Reply at 19. Neither party cites any legal support its arguments.

The court can only construe McGraw-Hill's cavil as a plea of undue burden. A party may be excused from compliance with a subpoena that imposes an undue burden when the subpoena is so broad that compliance will severely disrupt its normal business operations. *FTC v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C. Cir. 1977); FED R. CIV. P. 45(c)(3). McGraw-Hill has acquiesced, after court order, to similar requests for trade report submissions in the past. *Whitney*, 441 F. Supp. at 69; *McGraw-Hill*, 390 F. Supp. 2d at 36. These reports are finite in number and limited to a span of about three months for each of four years. Would resort to demonstration by affidavit (rather than production of documents) lighten the subpoena's burden? Possibly. But "[s]ome burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest." *Texaco*, 555 F.2d at 882. On this point, therefore, the court shall not modify the subpoena.

### 3. The Court Will Not Narrow Document Request No. 4 to Papers from the Houston Ship Channel Hub

Addressing McGraw-Hill's proposal to limit Document Request No. 4 to editorial papers associated with trades occurring at the Houston Ship Channel Hub, the Commission avers that the energy company's trades may have impacted prices at the hubs for the Texan cities of Katy and Waha as well as Houston. App.'s Reply at 24. As support, the Commission cites a Department of Energy web publication identifying Waha and Katy as important natural gas centers. Bruno Decl. ¶ 27. The Commission further explains that natural gas trades are based on price differentials between major trading ports, such as Houston, Waha and Katy. Banar Decl. ¶

8. Accordingly, the Commission agrees to limit its Document Request No. 4 to papers related to the ports of Houston, Waha and Katy.  App.'s Reply at 24.

McGraw-Hill accuses the Commission of proffering nothing more than conclusory statements to support a link between trades in Houston and prices in Waha and Katy, but this only follows from McGraw-Hill's own misapprehension of the difference between a statement that is conclusory and one that is based on circumstantial evidence – the one being supported by no evidence, the other by indirect evidence.  *See* BLACK'S LAW DICTIONARY 284, 576 (7th ed. 1999)  The Commission's circumstantial evidence shows that natural gas trades are based on price differentials between major ports and that Waha, Katy and Houston are major ports.  It syllogistically follows, then, that trading at Houston may affect prices at Waha and Katy.  *But cf. In re Natural Gas Commodities Litigation*, 235 F.R.D. 199, 214 (S.D.N.Y. 2005) (declining to endorse a request for documents from all hubs, because plaintiffs had no theory as to how all hub trades could affect New York Mercantile Exchange, which was exclusively based off trades from only one hub).  To demand that the Commission show a specific, traceable nexus between the energy company's particular trades in Houston and particular subsequent prices in Waha and Katy at this preliminary stage in proceedings goes beyond the ambit of the protections of the privilege.  *See In re Natural Gas Commodities Litigation*, 235 F.R.D. 241, 246-47 (S.D.N.Y. 2006) (holding that "[a]t [the] pretrial stage of the litigation, causation [as regards the interaction of natural gas prices at different hubs] is not a showing Plaintiffs are required to make in order to satisfy the three prongs of the [balancing] test and thus obtain relevant discovery").  Because the Commission's concession to limit its request to the three aforenamed cities is reasonable, the court will not demand more.

**IV.  CONCLUSION**

For the reasons stated herein, the court denies McGraw-Hill's motion for leave to file a sur-reply, grants in part the Commission's motion for an order requiring compliance with an administrative subpoena and grants in part McGraw-Hill's cross-motion for a protective order. An order consistent with this memorandum opinion is separately and contemporaneously issued this 27th day of August 2007.

RICARDO M. URBINA
United States District Judge